■ In the Matter of JOHNNY ROBINSON, Petitioner, v ARTHUR LEONARDO, as Superintendent of Great Meadow Correctional Facility, et al., Respondents.—Casey, J.

On June 21, 1990, petitioner, who was serving sentences that included 15 years to life for the crime of murder in the first degree, was admitted to the special housing unit (hereinafter SHU) at Great Meadow Correctional Facility in Washington County. The following day petitioner was served with an "administrative segregation recommendation" which notified him that prison officials intended to administratively segregate him from the general prison population. The proposed segregation was based on "confidential information" that petitioner was involved "in a conspiracy to be broken out of the Brooklyn House of Detention". The "recommendation" continued: "Confidential source stated that outside associates of [petitioner] planned to hijack a helicopter and use that to free [him] from incarceration". The recommendation served on petitioner informed him that he would be provided with a hearing within 14 days of service.

Pending the hearing petitioner was administratively segregated because prison officials feared that petitioner might employ the suggested method to escape and that he presented an immediate threat to the safety, security and order of the facility. Petitioner was provided with a list of eight employee assistants and indicated in writing that he wished to choose three. However, he did not indicate his choice of the three assistants.

At the hearing, only petitioner and Assistant Inspector General Michael Urban testified. Petitioner called no witnesses because "[t]here's really nobody to call", but he requested that the Hearing Officer contact the Brooklyn House of Detention and speak to a captain there "in regards to [his] status". Although the Hearing Officer requested petitioner to select an assistant from the list and agreed to adjourn the hearing for that purpose, petitioner declined and when told by the Hearing Officer that an assistant would assist petitioner in contacting witnesses and obtaining documents, petitioner waived his right thereto in writing. Petitioner on his own behalf speculated that the confidential informant might have a motive for relaying information and offered his own explanation of the basis for the information. Petitioner explained that he had been convicted for his role in the commission of nine murders and conspiracy to traffic drugs. These convictions are unrelated to the crimes for which he was incarcerated at Great Meadow. At that time, petitioner and his three codefendants were being detained at the Brooklyn House of Detention awaiting sentencing on their convictions and petitioner expected to receive consecutive terms of 125 years to life. The extra protective activity along with the media and newspaper coverage prompted reports of an intended escape if defendant was convicted.

During an adjournment in the hearing and without petitioner's presence, the testimony of Urban was taken by the Hearing Officer. The Hearing Officer thereupon told petitioner that she found the testimony reliable and credible, but the Hearing Officer would not disclose its details in the interest of facility safety and security. Relying on this testimony together with the testimony of petitioner and the previously conducted administrative segregation interview and recommendation, the Hearing Officer concluded that the evidence supported a recommendation that petitioner be administratively segregated. This determination was based on the plans to effect an escape from the Brooklyn House of Detention and the length of petitioner's potential sentence. Placing petitioner in general

population was believed to jeopardize the safety and security of the facility. The Hearing Officer's disposition was administratively affirmed, which prompted petitioner to commence this CPLR article 78 proceeding to annul the determination. By order of Supreme Court, the proceeding was transferred here.

The confidential memorandum prepared by a high-ranking employee of the New York City Department of Correctional Services confirmed in detail the information supplied by the confidential informant and also the trustworthiness of the informant. The Hearing Officer also considered the testimony of Urban which corroborated the substance of the memorandum report and demonstrated that the investigation officers did, in fact, find tangible evidence supporting the truth of the confidential informant. Contrary to petitioner's claim, there is no requirement that the Hearing Officer personally interview the confidential informant. What is required is that the record contain sufficient material to enable the Hearing Officer to assess the credibility of the informant and the reliability of the information *(see, Matter of Franklin v Hoke,* 174 AD2d 908).

This record, which includes confidential documents submitted for an in camera review in the interest of institutional safety *(see, Matter of Boyd v Coughlin,* 105 AD2d 532), provided an adequate basis for crediting the confidential information by the Hearing Officer. We find petitioner's other contention, that the Hearing Officer was unfair and biased, completely devoid of merit.

Mercure, Mahoney and Harvey, JJ., concur. Adjudged that the determination is confirmed, without costs, and petition dismissed.